# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ADAM SANCHEZ, )<br>)<br>    **Plaintiff,** )<br>)<br>v. )<br>)<br>DELOITTE SERVICES, LP, )<br>)<br>    **Defendant.** ) | **Case No. 3:18-cv-0 738**<br>**Judge Aleta A. Trauger** |

## MEMORANDUM

Before the court is plaintiff Adam Sanchez's Motion for Leave to File Amended Complaint (referred to herein as "Motion to Amend"). (Doc. No. 28.) Sanchez seeks to amend his Complaint under Rule 15(a)(2) of the Federal Rules of Civil Procedure to assert new claims for retaliation under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311(b), and conspiracy to interfere with civil rights under 42 U.S.C. § 1985(2). Defendant Deloitte Services, LP ("Deloitte") opposes the motion. (Doc. No. 30.) For the reasons set forth herein, the Motion to Amend will be granted in part and denied in part.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Adam Sanchez filed the original Complaint initiating this action on August 7, 2018, asserting a claim for violation of USERRA and a state law conversion claim. (Doc. No. 1.) He alleges that he was "at all relevant times" an employee of defendant Deloitte, having begun his employment in 1999. Although he does not expressly allege as much in the Complaint or proposed First Amended Complaint ("PFAC"), other documentation filed by the plaintiff in support of his

Motion to Amend indicates that he is no longer employed by Deloitte, having resigned shortly before filing this lawsuit. (*See* Doc. No. 29-2 ¶ 2.)

After an initial case management conference, the court entered a Case Management Order on December 5, 2018, establishing, among other scheduling matters, a May 10, 2019 deadline for filing motions to amend pleadings. (Doc. No. 15.) Trial was set for April 7, 2020.

As set forth in the PFAC attached to the plaintiff's Motion to Amend, the parties agreed to an early mediation, which was conducted on February 1, 2019. (Doc. No. 29-1 ¶ 62.) According to the plaintiff, the gravamen of Sanchez's claims is that Deloitte discriminated against him in violation of USERRA by failing to reemploy him in the same position he had occupied before his employment was interrupted by his service in the United States Army Reserves. One of the central points of contention at the mediation was whether Sanchez was making the same salary as individuals in the Senior Manager position in which Sanchez maintains he should have been placed upon his return from deployment. During the mediation, the plaintiff disclosed that he was in possession of salary information pertaining to some Senior Managers, which he claims he obtained legally, while he was still employed. (Doc. No. 29-1 ¶ 63; Doc. No. 29, at 2.) He asserts that this information was shared confidentially only with his counsel, Deloitte, and the mediator and that it established that the defendant was being dishonest about Sanchez's comparative salary. (Doc. No. 29-1 ¶ 64; Doc. No. 29, at 2.)

In June 2019, just a month after the expiration of the deadline to file motions to amend pleadings in this case, Deloitte filed a lawsuit against Sanchez in Davidson County Chancery Court, alleging breach of contract and violation of the Tennessee Personal and Commercial Computer Act of 2003 ("State Lawsuit"). (Doc. No. 29-1 ¶ 65; Doc. No. 29, at 2.) Deloitte asserts that it learned for the first time during the mediation in February that the plaintiff had "improperly

accessed and copied confidential information about other Deloitte employees without authorization." (Doc. No. 30, at 1.) Having purportedly made this discovery, Deloitte filed the State Lawsuit. Sanchez claims that, rather than "properly defending the matter in federal court," Deloitte retaliated against him for bringing this USERRA lawsuit by filing the State Lawsuit. He asserts that the State Lawsuit "lacks reasonable basis in fact and law." (Doc. No. 29-1 ¶ 100.)

In August 2019, Sanchez filed a motion requesting a second case management conference, asserting that (1) Deloitte had filed the State Lawsuit based on facts arising from this lawsuit, after the deadline for amending pleadings in this case; (2) Sanchez had filed a motion to dismiss the State Lawsuit;[1] and (3) since the deadline for pleading amendments had expired in this case, the plaintiff would be required to file a third lawsuit unless the Case Management Order in effect in this case were modified in order to permit him to amend his Complaint. He therefore sought a second case management conference and a modification of the previously established deadlines in order to permit him to file a motion to amend the complaint. The court granted the motion, conducted a second case management conference, and granted the plaintiff leave to file a motion to amend his complaint. (Doc. Nos. 23–25.) The present motion followed.

The PFAC asserts that the filing of the State Lawsuit constitutes retaliation in violation of USERRA, 38 U.S.C. § 4311(b). In addition, the PFAC articulates a cause of action for conspiracy in violation of 42 U.S.C. § 1985(2). In support of that claim, the PFAC appears to name new defendants: Howard Byrd and "Unknown John and Jane Does" are identified as defendants in the case caption of the PFAC. (Doc. No. 29-1, at 1.) However, they are not identified as parties under the "Parties" section of the PFAC, and, although the PFAC contains factual allegations concerning

---

[1] Sanchez originally indicated that that motion was to be heard in the state court on September 13, 2019. (Doc. No. 22, at 1.) He now informs the court that the hearing on that motion was postponed until December 13, 2019. (Doc. No. 33, at 1.)

them, they are not identified as defendants anywhere in the body of the PFAC. Instead, the PFAC confusingly refers to Deloitte as the sole "Defendant." It alleges that Byrd, Deloitte's Director of Federal Contracts, met with "unknown John and Jane Does" after the mediation to "discuss their personal misgivings about Plaintiff and this lawsuit" (Doc. No. 29-1 ¶ 66); that Byrd and the John and Jane Does "discussed and agreed, outside the scope of any policy or procedure or employment responsibility required of them, based on their personal desire, to impede, deter, and hinder [Plaintiff] from showing up in court and fully prosecuting his original claims in this lawsuit" (*id.* ¶ 67); that Byrd and the John and Jane Does met with other Deloitte employees and persuaded Deloitte to file the State Lawsuit against the plaintiff, for the purpose of intimidating the plaintiff and hindering the pursuit of his claims in this court (*id.* ¶ 68).

The PFAC also differs from the original Complaint in that, while the latter states only a general claim for violation of USERRA, "38 USC 4301 *et seq.*" (Doc. No. 1, at 8), the PFAC sets forth distinct claims for USERRA discrimination, in violation of 38 U.S.C. § 4311(a), and failure to reemploy, in violation of 38 U.S.C. §§ 4312 and 4313.

Deloitte does not contest the proposed clarification of the USERRA claims, but it opposes the Motion to Amend on the ground that adding the proposed retaliation and conspiracy claims would be futile, in the sense that neither of the new claims for relief could withstand a motion to dismiss. (Doc. No. 30.) Sanchez, with the court's permission, has filed a Reply. (Doc. No. 33.)

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a)(1) provides that a party can amend its pleading once "as a matter of course" under limited circumstances. Rule 15(a)(2) applies "[i]n all other cases," and it provides that a party may amend "only with the opposing party's written consent or the court's leave." Such leave should be freely given "when justice so requires." *Id.* Rule 15(a)(2)

"embodies a 'liberal amendment policy.'" *Brown v. Chapman*, 814 F.3d 436, 442–43 (6th Cir. 2016) (citation omitted).

To determine whether to grant leave under this liberal policy, courts typically weigh several factors, including "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458–59 (6th Cir. 2001) (citation omitted). Generally, futility provides an independent basis for dismissal when any claims sought to be added "could not survive a motion to dismiss." *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005).

To withstand a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings that offer only "labels and conclusions," or a "formulaic recitation of the elements of a cause of action," will not do. *Twombly*, 550 U.S. at 555.

## III. DISCUSSION

### A. USERRA Retaliation Claim

Deloitte argues that the USERRA retaliation claim is futile because it would be subject to dismissal under Rule 12(b)(6). More specifically, it contends that (1) the filing of a counterclaim cannot be retaliatory unless it is both baseless and filed in bad faith, and the plaintiff cannot show that Deloitte's claims are objectively baseless; (2) the PFAC "expressly admits that Plaintiff engaged in the very conduct on which the State Lawsuit's claims are based" (Doc. No. 30, at 6); (3) the State Lawsuit is not an adverse employment action for purposes of USERRA, even under

the broad standard embraced by the Supreme Court in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), for Title VII retaliation actions.

Sanchez's Motion for Leave to Amend largely anticipated Deloitte's futility arguments. He contends that (1) *White*'s "reasonable person" standard should be extended to USERRA retaliation claims; (2) even under a narrower reading of USERRA's anti-reprisal provision, the filing of a retaliatory lawsuit may constitute an adverse employment action, because it could adversely impact his future career prospects. In his Reply, he further argues that the State Lawsuit is both baseless and filed in bad faith, with a retaliatory motive. The Reply incorporates by reference Sanchez's still-pending motion to dismiss filed in the State Lawsuit, which is attached as an exhibit to the Reply. He also contends that retaliatory animus alone is sufficient to support a retaliation claim.

### 1. **White *Does Not Govern the Interpretation of USERRA***

USERRA's prohibition against retaliation states that an employer "may not discriminate *in employment* against or *take any adverse employment action* against any person" because he has taken an action to enforce a protection provided by USERRA or exercised a right provided by USERRA. 38 U.S.C. § 4311(b) (emphasis added). The plaintiff argues that USERRA's retaliation prohibition should be construed consistently with Title VII's anti-retaliation clause, on the basis that he "cannot find a single case in which a court has ever held that an employer's retaliatory lawsuit cannot constitute an 'adverse employment action' under USERRA ever since the U.S. Supreme Court declined to adopt the Sixth Circuit's definition of 'adverse employment action' in Title VII cases." (Doc. No. 29, at 4 (citing *White*, 548 U.S. 53).) He argues, in short, that the Supreme Court's expansive interpretation of Title VII's anti-retaliation provision should, absent

Sixth Circuit authority to the contrary, govern the interpretation of USERRA's anti-retaliation provision.

In *White*, the Supreme Court concluded, based on the statutory language, that "Title VII's substantive provision and its antiretaliation provision are not coterminous. The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *White*, 548 U.S. at 67. The Court ultimately held that, to establish retaliation in violation of Title VII, a plaintiff need only show that she was subject to some "materially adverse" action by the employer, defined as an action that "might well have dissuaded a reasonable employee from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks and citation omitted).

While the Sixth Circuit has not expressly been called upon to distinguish between the anti-retaliation provisions in USERRA and Title VII, it is nonetheless clear that *White* does not govern the interpretation of USERRA's retaliation provision. Even post-*White*, the Sixth Circuit has repeatedly recognized that USERRA prohibits an employer from "taking an *adverse employment action* against any employee in retaliation for his exercise of rights under USERRA." *Savage v. Fed. Express Corp.*, 856 F.3d 440, 447 (6th Cir. 2017) (emphasis added), *reh'g denied* (July 26, 2017); *see also Eichaker v. Vill. of Vicksburg*, 627 F. App'x 527, 533 (6th Cir. 2015) ("Under the Act, an employer may not 'take any adverse employment action against' a person for 'tak[ing] an action to enforce a protection afforded under' the Act." (quoting 38 U.S.C. § 4311(b)(1)): *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1026 (6th Cir. 2010) ("In order to make out a USERRA retaliation claim, an employee bears the initial burden of showing, by a preponderance of the evidence, that his protected status was a motivating factor in the adverse employment action.").

In addition, those appellate courts that have considered the question unanimously recognize that *White* does not apply to USERRA, because the statutory language of USERRA, unlike Title VII, unambiguously prohibits, not just "discriminat[ion]," 42 U.S.C. § 20003-3(a), but "discrimination *in employment*" and "any adverse *employment* action," 38 U.S.C. § 4311(b). *See, e.g.*, *Kitlinski v. Merit Sys. Prot. Bd.*, 857 F.3d 1374, 1381 n.3 (Fed. Cir. 2017) ("[T]he language of the anti-retaliation provision of Title VII . . . does not contain the limiting language found in section 4311(b) of USERRA; for that reason the anti-retaliation provision of Title VII has not been limited to employment-related actions." (citing *Crews v. City of Mt. Vernon*, 567 F.3d 860 (7th Cir. 2009)); *Lisdahl v. Mayo Found.*, 633 F.3d 712, 721 (8th Cir. 2011) ("'[T]extual differences between the anti-retaliation provisions of Title VII and USERRA suggest that the latter has a more limited scope.' Unlike the situation in *Burlington*, no comparable textual distinction exists between USERRA's anti-discrimination provision, 38 U.S.C. § 4311(a), and the anti-retaliation provision, § 4311(b). USERRA's anti-retaliation provision expressly limits actionable harm to 'adverse employment action,' not the broader 'discrimination' prohibited by Title VII's anti-retaliation provision." (quoting *Crews*, 567 F.3d at 861)).[2]

The court therefore rejects the plaintiff's invitation to apply *White* to the interpretation of 38 U.S.C. § 4311(b).

---

[2] *But see Lambert v. United Parcel Serv.*, 266 F. Supp. 3d 1369, 1372 & n.1 (M.D. Fla. 2017) (noting that *White* had expanded the scope of "employer conduct considered actionable" under Title VII's retaliation provision to include any action that "has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related'" and concluding that, "in the absence of controlling precedent defining an adverse employment action under USERRA, . . . it is appropriate to rely on this Title VII jurisprudence").

## 2. The Filing of a Retaliatory Lawsuit After Employment Has Ended May Be an Adverse Employment Action Under USERRA

The question is whether Deloitte's filing a separate State Lawsuit may constitute an "adverse employment action" under USERRA. USERRA does not define the term "adverse employment action," but courts have generally held that the definition of "adverse employment action" applied in Title VII discrimination cases (and other similar employment discrimination lawsuits) and pre-*White* retaliation cases applies to USERRA claims. *See, e.g.*, *Crews*, 567 F.3d at 868–69 ("Although we have not previously discussed the statute's 'adverse employment action' requirement in the specific context of a USERRA retaliation claim, our case law on other civil rights statutes describes those employment actions that are sufficiently 'adverse' to be actionable retaliation."). These definitions generally appear to presume that the employee is still currently employed and that the adverse action affects the terms of his current employment. *See, e.g.*, *Watson v. City of Cleveland*, 202 F. App'x 844, 854 (6th Cir. 2006) ("An adverse employment action requires a materially adverse change in the terms and conditions of employment." (citing *Allen v. Mich. Dep't. of Corrs.*, 165 F.3d 405, 410 (6th Cir. 1999)); *Kocsis v. Multi–Care Mgmt. Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (holding that a plaintiff must show a "materially adverse change in the terms of her employment," such as "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation" (citations omitted)); *accord Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 926 (8th Cir. 2007) ("An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." (citations omitted)).

Sanchez, the plaintiff here, was not an employee at the time he brought suit or when Deloitte filed the State Lawsuit. Nonetheless, the legislative history of USERRA indicates that the

enactment is to be broadly construed in favor of servicemembers and that the term "employee" is intended to include former employees asserting claims based on post-employment events:

> The Committee intends that these anti-discrimination provisions be broadly construed and strictly enforced. The definition of employee, which also includes former employees, would protect those persons who were formerly employed by an employer and who have had adverse action taken against them by the former employer since leaving the former employment.

Uniformed Services Employment and Re-employment Act of 1994, H.R. Rep. No. 103-65, 103rd Cong., 1st Sess.1993, 1994 U.S.C.C.A.N. 2449, 2456–57 (1994), *quoted in Wrigglesworth v. Brumbaugh*, 121 F. Supp. 2d 1126, 1135 (W.D. Mich. 2000).

In addition, courts have acknowledged that acts that affect an employee's future job prospects may qualify as an adverse employment action. *See, e.g.*, *Bailey v. USX Corp.*, 850 F.2d 1506, 1508, 1509 (11th Cir. 1998) (holding that a former employee had standing to bring a Title VII retaliation claim and that the employer's providing an unfavorable employment reference for the former employee could constitute an adverse employment action for purposes of Title VII's retaliation provision, but that the plaintiff in that case failed to prove damages arising from the negative reference). At the same time, a number of courts have found that "the filing of lawsuits, not in good faith and instead motivated by retaliation, can be the basis for a claim under Title VII." *E.E.O.C. v. Outback Steakhouse of Fla., Inc.*, 75 F. Supp. 2d 756, 758 (N.D. Ohio 1999) (quoting *Harmar v. United Airlines, Inc.*, No. 95 C 7665, 1996 WL 199734 (N.D. Ill. Apr. 23, 1996); *see also see also Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996) (initiating malicious prosecution against former employee can be retaliatory under Title VII); *Beckham v. Grand Affair, Inc.*, 671 F. Supp. 415, 419 (W.D.N.C. 1987) (holding that the arrest and prosecution of a former employee for criminal trespass on her former employer's premises after filing an EEOC sex discrimination complaint was an adverse employment action under Title VII); *EEOC v. Virginia*

*Carolina Veneer Corp.*, 495 F. Supp. 775, 778 (W.D. Va. 1980) (an employer's filing a civil defamation action based solely on a former employee's filing of an EEOC sex discrimination complaint constituted an adverse employment action that was actionable under Title VII's retaliation provision); *accord Gill v. Rinker Materials Corp.*, No. 3:02-CV-13, 2003 WL 749911, at *4–5 (E.D. Tenn. Feb. 24, 2003) ("[T]he filing of lawsuits, not in good faith and instead motivated by retaliation, can be the basis for a claim under Title VII." (quotation marks and citation omitted).

Deloitte argues that, even assuming that *White*'s retaliation standard applies to USERRA, the federal courts have generally held either that counterclaims cannot, as a matter of law, be retaliatory or, at most, that the defendant's filing of a counterclaim in response to an employee's lawsuit for employment discrimination does not give rise to a retaliation claim unless the counterclaim is baseless or filed in bad faith. It contends that the PFAC "fails to allege facts that, if true, would show that Deloitte's State Lawsuit is baseless or filed in bad faith." (Doc. No. 30, at 6.) The only basis for that assertion is that the PFAC "expressly admits that Plaintiff engaged in the very conduct on which the State Lawsuit's claims are based—accessing and copying Deloitte's confidential information." (*Id.*)

In fact, the PFAC alleges that the plaintiff disclosed his knowledge of the salaries of some of Deloitte's Senior Managers to his attorney and to the mediator during the course of mediation (PFAC ¶¶ 63, 64); that the State Lawsuit was initiated for the purpose of impeding the plaintiff's pursuit of his claims in this court (*id.* ¶¶ 67–69); that "[t]he State Lawsuit lacks reasonable basis in fact and law, as it is Plaintiff's knowledge and belief that Defendant expressly or implicitly granted Plaintiff access to all salary information that forms the basis of the state action, which precludes liability as a matter of law" (*id.* ¶ 100); and that "[t]he State Lawsuit contains retaliatory

motive and treats Plaintiff differently from non-military servicemembers in Defendant's employ" (*id.* ¶ 101).

The court is not in a position, based solely on the parties' arguments for and in opposition to the Motion to Amend, to determine, as a factual or legal matter, that the claims asserted in the State Lawsuit are legally baseless. Although the complaint filed in the State Lawsuit and Sanchez's motion to dismiss that complaint have been introduced as exhibits to the parties' filings in this case, the court declines to engage in what would amount to full-blown analysis of the allegations in that complaint, without the aid of complete briefing by the parties, to decide whether the claims stated therein are baseless under state law. Instead, the court finds, at this juncture, that the PFAC adequately alleges that Deloitte brought an objectively baseless lawsuit. *Accord Rosania v. Taco Bell of Am., Inc.*, 303 F. Supp. 2d 878, 888 (N.D. Ohio 2004) (granting the plaintiff's motion to amend the complaint to add counterclaims for retaliation based on the defendant's having filed counterclaims in the plaintiff's FMLA lawsuit, but without prejudice to the defendant's ability to seek dismissal of the claims upon greater development of the record).

The PFAC also adequately alleges that the State Lawsuit was brought in bad faith, with a retaliatory motive. In that regard, the court further notes that, although Deloitte repeatedly frames the claims in the State Lawsuit as "counterclaims" and asserts that the State Lawsuit is "akin to a permissive counterclaim because it does not arise out of the same transaction or occurrence that gave rise to Plaintiff's USERRA claim" (Doc. No. 30, at 3 n.1), the claims were brought in a separately filed lawsuit rather than as mere counterclaims in this case, thus forcing Sanchez to litigate in two fora rather than one. Courts have recognized that the distinction between mere counterclaims and stand-alone retaliatory lawsuits is not trivial. For example, in *Beltran v. Brentwood North Healthcare Center, LLC*, 426 F. Supp. 2d 827, 834 (N.D. Ill. 2006), a Fair Labor

Standards Act case, the court concluded that the filing of a non-frivolous, compulsory counterclaim was not an adverse action that would support a retaliation claim, but it acknowledged that the filing of a separate lawsuit might be retaliatory:

> We recognize that an employer's lawsuit filed with a retaliatory motive rather than in good faith may constitute an adverse action and provide a basis for a retaliation claim. . . . Because filing a counterclaim is different from initiating a lawsuit, courts in this district repeatedly have ruled that filing a counterclaim, without more, is not an adverse action and thus cannot support a retaliation claim. . . . [U]nlike initiating litigation against an employee, filing a counterclaim will not chill plaintiffs from exercising and enforcing their statutory rights because by the time the employer files its counterclaim, plaintiffs have already made their charges and initiated a lawsuit. Additionally, asserting a counterclaim generally will not cause a plaintiff to incur the expense of hiring a lawyer to respond to the claim because the plaintiff likely will already have legal representation. Moreover, as Brentwood points out, its counterclaim was compulsory—under Rule 13 of the Federal Rules of Civil Procedure, Brentwood had to file any claims against plaintiffs arising out of the same transaction or waive them. Because counterclaims are supposed to be brought in response to a complaint, there is nothing suspicious about the timing of Brentwood's counterclaim.

*Beltran*, 426 F. Supp. 2d at 833–34 (internal citations omitted); *see also E.E.O.C. v. K & J Mgmt., Inc.*, No. No. 99 C 8116, 2000 WL 342483566, at *3 (N.D. Ill. June 8, 2000) (distinguishing between the filing of counterclaims and the initiation of a separate lawsuit against an employee who has filed EEOC charges).

The claims raised in the State Lawsuit clearly could have been asserted within the context of the lawsuit in this court, whether they would have been considered permissive or mandatory. *See* Fed. R. Civ. P. 18. Deloitte might contend that the May 10, 2019 deadline for filing motions to amend the pleadings had expired by the time it filed suit, but it allegedly learned the facts giving rise to its claims during the mediation on February 1, 2019, well before that deadline expired. Moreover, it easily could either have filed a motion for leave to assert counterclaims before the expiration of the deadline for filing motions to amend pleadings or, if it needed additional time to formulate its pleading, a motion to extend the deadline even before it expired. In either event, the

fact that Deloitte filed the State Lawsuit without seeking to bring counterclaims in this court, thus forcing the plaintiff to litigate in both state and federal court, standing alone, smacks of vindictiveness.

The PFAC adequately alleges both that the State Lawsuit is baseless and that it was filed in bad faith. Consequently, the court does not reach the question of whether, as the plaintiff argues, the filing of a separate lawsuit with a retaliatory animus may give rise to a retaliation claim under 38 U.S.C. § 4311(b), even if the lawsuit is not shown to be objectively baseless. The Motion to Amend to add that claim will be granted, but without prejudice to the defendant's ability to seek dismissal of the claim in a later motion.

### B. Section 1985(2) Conspiracy Claim

The PFAC purports to state a claim for violation of "42 U.S.C. § 1985(2) (Clause One)." (Doc. No. 29-1, at 14.) It alleges that Howard Byrd, then Deloitte's Director of Federal Contracts, conspired with other unidentified individuals, who appear also to be Deloitte employees, to persuade Deloitte to file suit against Sanchez in state court; that the purpose of the conspiracy was to deter or intimidate Sanchez from "attending federal court to pursue his claims in this case" (PFAC ¶ 117), and that "Byrd and the other co-conspirators acted outside the course of their employment." (*Id.*) Deloitte seeks dismissal of this claim on the grounds that (1) the allegations in the PFAC are insufficiently specific to assert a conspiracy claim; (2) the conspiracy claim is barred by the intracorporate conspiracy doctrine; and (3) the State Lawsuit is protected by the *Noerr-Pennington* Doctrine. The court finds that the claim is futile because it is not pleaded with sufficient particularity.

Clause One of Section 1985(2) creates a cause of action by an injured party against any one or more of those persons who "conspire to deter, by force, intimidation, or threat, any party or

witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully." The elements of this claim are "(1) a conspiracy between two or more persons, (2) to deter a [party or] witness by force, intimidation, or threat from attending federal court or testifying freely in a matter there pending, which (3) causes injury to the claimant." *Mitchell v. Johnson*, No. 07-40996, 2008 WL 3244283, at *2 (5th Cir. Aug. 8, 2008) (quoting *Rutledge v. Ariz. Bd. of Regents*, 859 F.2d 732, 735 (9th Cir. 1988)). The Sixth Circuit has held both that the factual allegations to support a conspiracy under § 1985 must be pleaded with some degree of specificity, *W. Cong. St. Partners, LLC v. Rivertown Dev., LLC*, 739 F. App'x 778, 784 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 486 (2018), and that the intracorporate conspiracy doctrine applies to conspiracies under § 1985, *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008).

In *West Congress*, the Sixth Circuit affirmed the dismissal of the plaintiff's conspiracy claims under § 1985, stating:

> [W]e are not bound to accept as true a legal conclusion couched as a factual allegation, but that is all West Congress has given us. West Congress alleges that the public defendants participated in a concerted effort to deprive West Congress of its property through a fraudulent eviction. West Congress asserts that this effort was part of a long and voluminous history of abuses and civil rights violations—a complex conspiracy to evict an African-American Tenant and replace Plaintiff with a Caucasian-owned and operated bar/restaurant/brewery, in which the defendants played a substantial role. According to West Congress, the public defendants had direct knowledge of the settlement agreement, but nonetheless prepar[ed] and plann[ed] to enlist approximately thirty (30) officers of the court to aid in the eviction on the same day the order was fraudulently obtained, reveal[ing] that a concerted effort aided in the conspiracy to wrongfully evict and lock out Plaintiff.
>
> There is no factual content here sufficient to state with any plausibility the elements of 42 U.S.C. §§ 1985 and 1986. West Congress offers nothing more than the conclusory allegation that the defendants acted in concert and, without more, fail[s] to allege a sufficient factual basis to establish any sort of meeting of the minds or to link any of the alleged conspirators in a conspiracy to deprive [it] of [its] civil rights.

*W. Cong. St. Partners*, 739 F. App'x at 784 (internal quotation marks and citations omitted); *see also Amadasu*, 514 F.3d at 507 ("Amadasu also failed to state a claim under § 1985. Amadasu offered nothing more than the conclusory allegation that the defendants acted in concert and, without more, failed to allege a sufficient factual basis to establish any sort of 'meeting of the minds' or to link any of the alleged conspirators in a conspiracy to deprive him of his civil rights." (internal citation omitted)).

Similarly, here, Sanchez alleges in a wholly conclusory fashion that Howard Byrd conspired with unknown others to persuade Deloitte to file suit against Sanchez in order to deter him from pursuing his claims in this court. The factual content of the PFAC is utterly insufficient to state with plausibility the elements of a conspiracy claim under § 1985(2). On that basis, the court finds that the motion seeking leave to amend the complaint to assert a § 1985 conspiracy claim should be denied.

In addition, the PFAC does not adequately allege a conspiracy between two or more people, because the alleged co-conspirators are all agents of Deloitte. The intracorporate conspiracy doctrine posits that "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017);[3] *Barrow v. City of Hillview*, 775 F. App'x 801, 806–07 (6th Cir. 2019). The Sixth Circuit recognizes an exception to the intracorporate conspiracy doctrine "when employees act outside the course of their employment." *Barrow*, 775 F. App'x at 807 (quoting *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 841 (6th Cir. 1994)). "This exception acknowledges a distinction between collaborative acts done in pursuit of an employer's business and private acts

---

[3] In *Ziglar*, the Supreme Court acknowledged—and declined to resolve—a circuit split on the question of whether the intracorporate-conspiracy doctrine applies to § 1985 conspiracies. *Ziglar*, 137 S. Ct. at 1869.

done by persons who happen to work at the same place. As a result, when employees act outside the course of their employment, they and the corporation may form a conspiracy." *Id.* (internal quotation marks and citations omitted).

This exception is narrow; "managers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory." *Johnson*, 40 F.3d at 840 (6th Cir. 1994). Thus, for example, "a manufacturing corporation's employees might not be within the intracorporate conspiracy exception if, for racially discriminatory reasons, they attempted to prevent a person from renting an apartment owned by another company," *id.* at 840–41, as such action would clearly be outside the scope of the manufacturing corporation's interests. That type of extra-corporate activity is qualitatively different from "internal corporate decisions, which would almost always be within the scope of employment." *Id.* at 841.

In this case, the only corporate decision alleged to have been taken in furtherance of the conspiracy that had any effect on the plaintiff was Deloitte's decision to file an allegedly retaliatory lawsuit against him. The PFAC asserts that Byrd and the co-conspirators acted outside the scope of their employment in urging that result, but it does not contain any actual facts to support the conclusion that they acted outside the scope of their employment. As alleged, the action of persuading the corporation to file suit on its own behalf, even if motivated by a desire to retaliate, does not reasonably support an inference that the purported co-conspirators acted outside the scope of their employment. *Accord Ohio ex. Rel. Moore v. Brahma Investment Grp., Inc.*, 723 F. App'x 284, 289 (6th Cir. 2018) (affirming dismissal of § 1985 conspiracy claim where plaintiffs "made only conclusory allegations to support their claim" and failed to "set forth sufficient facts to show

that [the defendant] was engaged in personal pursuits rather than acting within the scope of his employment . . . to save this claim from the intracorporate conspiracy doctrine").

The PFAC fails to state a plausible claim under 42 U.S.C. § 1985(2) that could withstand a motion to dismiss. The court will therefore deny the Motion to Amend insofar as it relates to this claim. Having reached this conclusion, the court does not reach the defendant's argument under the *Noerr-Pennington* doctrine.

### IV. CONCLUSION

The plaintiff's Motion to Amend is futile insofar as the claim under 42 U.S.C. § 1985(2) could not withstand a motion to dismiss under Rule 12(b)(6). However, the defendant has not, at this juncture, shown that the plaintiff's proposed retaliation claim under 38 U.S.C. § 4311(b) is futile. The Motion for Leave to File Amended Complaint will therefore be granted in part and denied in part. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge