# IN THE UNITED STATED DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| ADAM SANCHEZ, ] | |
| Plaintiff, ] | |
| vs. ] | Case No: 3:18-cv-00738 |
| DELOITTE SERVICES, LP, ] | District Judge Aleta A. Trauger |
| Defendants. ] | JURY DEMAND |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Adam Sanchez, by and through counsel, and for cause of action will respectfully show to the Court as follows:

### JURISDICTION AND VENUE

1. This action is brought pursuant to the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 et seq. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 1343(a)(4).

2. This Court has subject matter jurisdiction over the USERRA claims pursuant to 38 U.S.C. § 4323(b)(3), which provides the district courts of the United States with jurisdiction over any USERRA action brought against a private employer.

3. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28. U.S.C. § 1367 because it is so related to the federal claims that it forms part of the same case controversy.

4. The claims asserted in this action arose in Davidson County, Nashville, Tennessee; therefore, proper venue for this action lies within the Middle District of Tennessee pursuant to 28 U.S.C. § 1391.

**PARTIES**

5. Plaintiff, Adam Sanchez, is an adult male individual and citizen of the United States who resides in Davidson County, Nashville, Tennessee.

6. At all relevant times, Mr. Sanchez was an employee of Defendant Deloitte pursuant to 38 U.S.C. § 4303(4)(a).

7. Mr. Sanchez is a 20-year member of the United States Army Reserve and is therefore entitled to the protections of USERRA. 38 U.S.C. § 4303(16).

8. Defendant is a private employer who "pays salary or wages for work performed or that has control over employment opportunities." 38 U.S.C. § 4303(4)(a).

9. Defendant is registered with the Tennessee Secretary of State as a Foreign Limited Partnership.

10. Defendant's registered agent for service in Tennessee is Corporation Service Company, 2908 Poston Ave, Nashville, TN 37203.

**FACTUAL ALLEGATIONS**

11. Plaintiff accepted a position with Defendant in October 1999.

12. At the time of his employment, Defendant was aware of Plaintiff's membership in the United States Army Reserve.

13. During his military service, Mr. Sanchez served in Acquisition & Logistics.

14. His duties ranged from full-scale surge logistics in Iraq and Afghanistan to procurements and contracting under the Defense Contracting Management Agency.

15. Defendant is a certified contracting officer for the Department of the Army with experience in acquisitions of a variety of products and services exceeding hundreds of millions of dollars.

16. Deloitte benefitted from Plaintiff's military experience and insight in performing contract management duties for Deloitte's Federal clients.

**Plaintiff's First Three Tours of Duty**

17. Plaintiff took part in 4 separate tours of active duty during his time working for Defendant.

18. The first tour was in 2003-2004 as part of Operation Noble Eagle.

19. Plaintiff was stationed at Ft. Campbell, Clarksville, TN for this tour.

20. Prior to this first mobilization, Plaintiff's title at Defendant was Financial Analyst Level 4.

21. Upon his return, Plaintiff transferred to IT Developer Level 4, demonstrating superior performance resulting in a 20% salary increase.

22. Plaintiff's second tour was in 2007-2008 as part of Operation Iraqi Freedom.

23. Plaintiff was stationed at Camp Arifijan, Kuwait for this tour.

24. Prior to this second mobilization Plaintiff's title at Defendant was IT Manager Level 5 with 4 directly reporting employees.

25. Upon his return, Plaintiff was promoted to IT Business Analyst Level 5, w/ superior performance along with a 10% salary increase.

26. Plaintiff's third tour was in 2009 as part of Operation Enduring Freedom.

27. Plaintiff was stationed in Kandahar, Afghanistan for this tour.

28. Prior to Mobilization Plaintiff's title at Defendant was IT Business Analyst Level 5.

29. Upon his return, Plaintiff was promoted to Federal Finance Manager Level 5 along with a 6% salary increase.

30. For Plaintiff's first three tours of duty, Defendant appreciated Mr. Sanchez and complied with USERRA, 38 U.S.C. § 4301 et seq.

31. Defendant clearly understood not only the benefits they received from Plaintiff's service, but also complied with their duties under federal law.

### Plaintiff's Fourth Tour of Duty

32. Plaintiff's fourth tour was in 2015-2016 as part of a Defense Acquisition Workforce Development tour.

33. Plaintiff coordinated with management at Defendant for his mobilization.

34. Prior to mobilization, Mr. Sanchez' title was Federal Business Systems Manager with 6 reporting employees.

35. In his position prior to his mobilization, Plaintiff directly supervised 6 employees and 2 contractors.

36. Not long before his mobilization, Plaintiff completed a significant Costpoint/Cognos implementation very important to Defendant

37. Defendant praised Plaintiff for his contributions to this implementation prior to his mobilization.

38. Defendant arranged for Mr. Mike Butler, Senior Manager, to assume Plaintiff's job responsibilities while he was mobilized.

39. Plaintiff coordinated with management at Defendant for his return, making a timely application for return.

## Plaintiff's Demotion Upon His Return

40. Upon Plaintiff's return he was notified his Federal Business Systems Manager position was eliminated.

41. Upon Plaintiff's return he was demoted to Lead Contracts Administrator- Level 4.

42. Defendant hired a new Federal Business Systems Manager soon after Plaintiff's demotion.

43. Based on his previous career trajectory and Plaintiffs excellent work record with Defendant, it is reasonably certain he would have been promoted in 2015-2016 had he not been deployed.

44. Other employees at Defendant held the position Plaintiff held prior to his deployment.

45. Other employees at Defendant have been hired into the position Plaintiff held after his return from his deployment.

46. There was no change of circumstances which would make proper reemployment impossible.

47. Defendant did not make any offers to train Plaintiff so he may perform any job duties of his former position which may have changed during the time of his deployment.

48. Plaintiff's employment at Defendant was not for a brief, non-recurrent period.

49. Plaintiff received no salary increase upon his return.

50. Plaintiff no longer supervised the same number of employees he supervised prior to his deployment.

51. Plaintiff no longer had the same level of responsibility after his return.

52. Plaintiff no longer had the opportunity to make the same work-related bonuses he had prior to his mobilization.

53. Plaintiff's new job was not simply a "title change" as Defendants perfidiously claim.

54. Defendant claimed they could not take transfers from another division as managers as an excuse for the demotion.

55. Defendant had two employees just prior to Plaintiff's return transfer into another division as a manager.

56. These employees had the same, or less, seniority than Plaintiff.

57. Given Plaintiff's work history and career trajectory at Defendant, Plaintiff would have certainly received a promotion over the time of this mobilization.

58. Plaintiff fulfilled his military requirements flawlessly and expected to be reinstated at a position he was entitled using the "escalator principle" as required by USERRA, 38 U.S.C. § 4301 et seq.

59. Defendant was well aware of their responsibilities under USERRA as evidenced by prior dealings with this Plaintiff and others who serve in the Military Reserves.

## **Retaliation After Filing the Original Complaint**

60. Plaintiff filed his original complaint in this action on August 7, 2018.

61. Defendant was aware of the lawsuit via service of the lawsuit to Defendant's counsel on August 8, 2018.

62. After Plaintiff filed his complaint, the parties met for a confidential meditation on February 1, 2019 in an attempt to settle the claims.

63. At the meditation, Defendant tried to falsely claim persons in Senior Manager positions made no more money than Plaintiff.

64. In response to Defendant's inaccurate statement and trying to make a good faith effort to settle this lawsuit, Plaintiff disclosed his knowledge of the salaries of some Senior Managers within the Federal Business Systems Division of Defendant.

65. Plaintiff only disclosed the salary information in the confidential meditation to his attorney, the mediator, and the Defendant.

66. On June 20, 2019, Defendant filed a separate state lawsuit against Plaintiff alleging (i) breach of a manager contract and (ii) violation of the Tennessee Personal and Commercial Computer Act of 2003 ("TPCCA") (the "State Lawsuit").

67. Defendant has never filed a lawsuit against a former employee in Tennessee for breach of a manager contract except for the lawsuit filed against Plaintiff.

68. Defendant has never filed a lawsuit against a former employee in Tennessee for violation of the Tennessee Personal and Commercial Computer Act of 2003 except for the lawsuit filed against the Plaintiff.

69. Plaintiff used his Deloitte issued username and password on his Deloitte issued laptop to access this information.

70. Deloitte had given Plaintiff permission to access this material by setting the permissions associated with Plaintiff's user ID to allow access to this information.

71. Defendant never attempted to add its state law claims as counterclaims in this lawsuit.

72. Filing the lawsuit in a separate court has caused Plaintiff to incur costs and fees, and caused other damages as well.

73. Defendant has attempted to use this lawsuit to force Plaintiff to either dismiss this lawsuit or take a settlement amount which would not compensate him for the damages he has suffered.

74. Defendant filed the state lawsuit without a legal basis and in bad faith.

75. Defendant would have had to provide the salary information during the discovery stage of this lawsuit.

76. As a result of the actions of the Defendant, Plaintiff has suffered damages.

77. Liquidated damages in this matter are proper.

78. Compensatory damages in this matter are proper.

79. Punitive damages in this matter are proper.

## **COUNT I- CONVERSION**

80. Conversion is the appropriation of another's property to one's own use and benefit, by the exercise of dominion over the property, in defiance of the owner's right to the property. *Ralston v. Hobbs*, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009).

81. In an action for conversion regarding pay, the plaintiff must establish that the defendant appropriated the plaintiff's earnings in defiance of the plaintiff's rights to those earnings. *Owens v. Univ. Club of Memphis*, 1998 Tenn. App. LEXIS 688, at *37 (Ct. App. Oct. 15, 1998)

82. Defendant refused to pay Plaintiff monies which were legally his in the form of additional salary and/or additional benefits to which he was entitled.

83. USERRA required Defendant to give Plaintiff those earnings; making the earnings the property of the Plaintiff.

84. Defendant knew the legal requirements for employers under USSERA and at a minimum, recklessly disregarded these rights as it relates to Plaintiff.

85. Each paycheck Defendant paid to Plaintiff after returning from his fourth deployment which did not include these earnings constitutes a new count of conversion.

86. Alternatively, Defendant intentionally disregarded the rights of the Plaintiff in order to keep monies which he was legally entitled to.

87. A plaintiff's damages in an action for conversion are measured by the sum necessary to compensate him for all actual losses or injuries sustained as a natural and probable result of the defendant's wrong. *Philp v. Se. Enters., LLC*, 2018 Tenn. App. LEXIS 73, at *21 (Ct. App. Feb. 9, 2018)

88. A Plaintiff may recover punitive damages for a conversion claim if they show by clear and convincing evidence the conversion was accompanied by malice, insult, reckless and willful disregard of the plaintiff's rights, or other proof showing the aggravated nature of the act. *White v. Empire Express, Inc.*, 395 S.W.3d 696, 720-21 (Tenn. Ct. App. 2012)

### COUNT II- FAILURE TO REEMPLOY IN SAME POSITION IN VIOLATION OF USERRA, 38 U.S.C. §§ 4312-4313, 4316

89. Plaintiff refers to and re-pleads all allegations contained in the aforementioned paragraphs.

90. "At the point of rehire, [38 U.S.C.] §§ 4312 and 4313 entitle a returning veteran to reemployment in either the position he would have held absent his departure for military service "or a position of like seniority, status and pay." *Petty v. Metro. Gov't of Nashville & Davidson Cty.*, 687 F.3d 710, 716 (6th Cir. 2012).

91. Under USERRA, "any person whose absence from a position of employment is necessitated by reason of [military service] shall be certified to the reemployment rights and benefits and other employment benefits of this chapter." 38 U.S.C. § 4312.

92. "A person entitled to reemployment under section 4312, upon completion of a period of service in the uniformed services, shall be promptly reemployed . . . in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, the duties of which the person is qualified to perform" or in another position "consistent with the circumstances of such person's case, with seniority." 38 U.S.C. § 4313(1)(A).

93. "The term 'seniority' means longevity in employment together with any benefits of employment which accrue with, or are determined by, longevity in employment." § 4301(12).

94. "In determining entitlement to seniority and seniority-based rights and benefits, the period of absence from employment due to or necessitated by uniformed service is not considered a break in employment." 20 C.F.R. § 1002.210.

95. "A person who is reemployed under this chapter is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed." 38 U.S.C. § 4316(a).

96. Plaintiff gave Defendant prior notice before leaving for his final deployment.

97. His deployment did not last more than 5 years.

98. Plaintiff was released from his service honorably by the United States Army Reserve.

99. Plaintiff made a timely application for reemployment upon his release from the United States Army Reserve.

100. Upon his return, Defendant did not return Plaintiff to a position with the seniority and other rights and benefits that the employee had on the date of the commencement of his service.

101. Upon his return, Defendant did not return Plaintiff to a position which included the additional seniority, rights and benefits Plaintiff would have attained if the employee had remained continuously employed.

102. Plaintiff earned less salary in his reemployed position than had he not served.

103. As a result, Plaintiff suffered damages.

**COUNT III – Discrimination in Violation of USERRA, 38 U.S.C. § 4311(a)**

104. Plaintiff refers to and re-pleads all allegations contained in the aforementioned paragraphs.

105. "After an employer rehires a veteran, [38 U.S.C.] § 4311 prohibits the employer from discriminating against the veteran with respect to 'any benefit of employment.'" *Petty v. Metro. Gov't of Nashville & Davidson Cty.*, 687 F.3d 710, 716 (6th Cir. 2012).

106. Section 4311(a) states that "a person [such as Plaintiff] shall not be denied . . . promotion . . . or any benefit of employment by an employer on the basis of [his membership in the armed services]." 38 U.S.C. § 4311(a).

107. "An employer shall be considered to have engaged in actions prohibited . . . under subsection [4311](a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service." 38 U.S.C. § 4311(c)(1).

108. After Plaintiff was rehired by Defendant into a demoted position, Plaintiff was repeatedly passed over for promotion.

109. Other non-servicemember employees at Defendant were hired into the position Plaintiff should have held after his return from his fourth deployment.

110. Defendant's refusal to promote Plaintiff was because of Plaintiff's membership in the uniformed services and the continuing time obligations associated with such service.

111. Plaintiff continued to suffer from ongoing discrimination in the form of refusal to promote because of his military status as well as the ongoing discriminatory nature of Plaintiff's demoted status, less pay, reduced job responsibilities, less prestige, and reduction in career potential.

112. Defendant treated Plaintiff differently than non-servicemembers because of his military membership.

113. But-for Plaintiff's status as a member of the armed services, Defendant would not have taken these actions.

114. As a result, Plaintiff suffered damages.

**COUNT IV – Acts of Reprisal in Violation of USERRA, 38 U.S.C. § 4311(b)**

115. Under USERRA, "[a]n employer may not discriminate in employment against or take any adverse employment action against any person because such person" has exercised a right provided for under § 4311(b). 38 U.S.C. § 4311(b).

116. "An employer shall be considered to have engaged in actions prohibited . . . under subsection (b), if the person's . . . exercise of a right provided for in this chapter . . . is a motivating factor in the employer's action." 38 U.S.C. § 4311(c)(2).

117. Numerous courts have held that the filing of a retaliatory lawsuit can be a basis for federal claims similar to USERRA. *See., e.g.*, *E.E.O.C. v. Outback Steakhouse of Fla., Inc.*, 75 F. Supp. 2d 756, 758 (N.D. Ohio 1999) (Title VII).

118. Plaintiff engaged in a statutorily protected activity by asserting his statutory rights under USERRA upon commencement of the present action in August 2018.

119. Defendant was aware of this statutorily protected activity upon being served with notice of the lawsuit.

120. Defendant learned of Plaintiff's knowledge of the alleged confidential salary information on February 1, 2019.

121. Defendant did not attempt to file counterclaims against Plaintiff in this court upon learning of Plaintiff's knowledge of the salary information.

122. Defendant learned of the alleged unlawful conduct of Plaintiff *three months* before the deadline for filing motions to amend pleadings.

123. Defendant did not file a motion for leave to assert counterclaims after the amendment deadline expired.

124. Defendant failed to investigate the alleged unlawful actions of Plaintiff before it filed the State Lawsuit.

125. Defendant filed the State Lawsuit against Plaintiff on June 20, 2019.

126. The claims raised in the State Lawsuit could have been asserted in this lawsuit.

127. Instead, Defendant vindictively brought its claims in a separate (state) lawsuit, forcing Plaintiff to litigate in two fora at increase time, cost, inconvenience, and risk of Plaintiff failing to obtain defense counsel.

128. Instead of negotiating in good faith towards a reasonable resolution of this lawsuit based on facts, Defendant filed the State Lawsuit because Plaintiff had information disproving its Defenses in this lawsuit..

129. Defendant hastily filed the State Lawsuit to harass and intimidate Plaintiff in an attempt to have Plaintiff settle his claims for less than they are worth.

130. Had Plaintiff not filed this lawsuit, Defendant would never have brought the State Lawsuit against Plaintiff.

131. The State Lawsuit was filed to impede, intimidate, deter, and hinder Defendant from fully prosecuting his claims in this lawsuit.

132. A lawsuit filed in bad faith with retaliatory motive can constitute an adverse employment action. *Gill v. Rinker Materials Corp.*, No. 3:02-CV-13, 2003 WL 749911, at *4-5 (E.D. Tenn. Feb. 24, 2003).

133. In addition, the State Lawsuit accuses Plaintiff of committing harmful, wrongful conduct against his employer during Plaintiff's employment, which significantly affects Plaintiff's future employment prospects and thus constitutes an adverse employment action. *See Bailey v. USX Corp.*, 850 F.2d 1506, 1508-09 (11 Cir. 1998).

134. Defendant has no legal basis for asserting it suffered harm from the limited and confidential disclosure of the salary information at mediation.

135. The State Lawsuit is objectively baseless because both of Defendant's State Lawsuit claims fail as a matter of law.

136. Plaintiff was not a manager for Defendant during the relevant time period and thus there was no manager contract to breach.

137. Even if the manager contract was effective, it does not prohibit employees from accessing the information that forms the basis of the State Lawsuit.

138. The alleged proprietary salary information that is the basis of the State Lawsuit is neither proprietary nor confidential.

139. Defendant cannot prove *any* damages in the State Lawsuit.

140. Thus, Defendant's breach of contract claim fails as a matter of law.

141. Plaintiff was expressly or implicitly granted access to all information that forms the basis of the State Lawsuit, which precludes liability under the TPCCA as a matter of law.

142. Defendant cannot satisfy the TPCCA damages element.

143. Defendant's TPCCA claim fails as a matter of law.

144. Thus, both claims of Defendant's State Lawsuit fail as a matter of law.

145. The State Lawsuit was vindictively filed because Plaintiff asserted his statutory rights in this lawsuit.

146. The State Lawsuit was brought in bad faith with retaliatory motive and is baseless as a matter of law.

147. As a result, Plaintiff suffered damages.

WHEREFORE, Plaintiff requests this court enter judgment in favor of the Plaintiff and against Defendant, for:

(1) all amounts of lost wages and benefits Plaintiff would have received but for Defendant's violation of USSERA, including any front pay to which he may be entitled,

(2) Liquidated damages,

(3) Compensatory damages,

(4) Punitive damages

(5) An order by the court to change all employment records to reflect Plaintiff's position and job duties as he would have been entitled to absent Defendant's violation of USSERA;

(6) All reasonable costs and attorney's fees;

(7) Prejudgment and post judgment interest;

(8) Any such other legal relief as may be appropriate or to which Plaintiff may be entitled under federal or state law.

**Plaintiff demands a jury in this matter.**

Respectfully Submitted,

**THE EMPLOYMENT & CONSUMER LAW GROUP**

**/s/ JONATHAN A. STREET**
**JONATHAN A. STREET, BPR No. 021712**
**BRANDON HALL, BPR No. 034027**
525 4th Avenue South
Nashville, TN 37210
(615) 850-0632

*Attorneys for Plaintiff*